IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MALCOLM AUGUSTUS JOHNSON,

                    Petitioner,                          No. CIV S-10-0237 JAM DAD P

            vs.

JAMES WALKER, Warden,

                    Respondent.                          FINDINGS & RECOMMENDATIONS

_____/

            Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered

against him on May 25, 2007 in the Sacramento County Superior Court on charges of possession

of methamphetamine, transportation of methamphetamine, and possession of drug paraphernalia.

He seeks federal habeas relief on the following grounds: (1) his sentence violates the Double

Jeopardy Clause and his federal constitutional rights to due process and to a jury trial; (2) the

sentence imposed upon him was not supported by sufficient evidence; and (3) his trial and

appellate counsel rendered ineffective assistance.  Upon careful consideration of the record and

the applicable law, the undersigned will recommend that petitioner's application for habeas

corpus relief be denied.

/////

1

FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal[1], the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury convicted defendant Malcolm Augustus Johnson of two counts of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and single counts of transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)) and possession of drug paraphernalia (Health & Saf. Code, § 11364). Defendant admitted an on-bail allegation and two prior convictions for transportation of methamphetamine for personal use.  The court struck one of the prior conviction allegations, and imposed a term of eight years and eight months in state prison.[2]

* * *

> **BACKGROUND**
>
> On March 1, 2006, Sacramento County Sheriff's Detective Kevin Reali and other officers went to defendant's residence, where he was found lying on a baggie of 1.62 grams of methamphetamine. A search of the residence also revealed a functional digital scale, a narcotics pipe, and two notebooks containing pay/owe sheets. Defendant's wallet contained $258 cash: a $100 bill, one $50 bill, four $20 bills, one $5 bill, and twenty-three $1 dollar bills.
>
> Searching defendant's car, officers found methylsulfonylmethane (MSM), an additive commonly added to methamphetamine to increase the product.  The methamphetamine was not analyzed to see whether it contained any MSM.
>
> On November 12, 2006, Sacramento County Sheriff's Sergeant John Zwolinski pulled over defendant's car for running a stop sign. Sergeant Zwolinski searched the car and found two cellular phones, two black plastic scales, and a small CD case containing syringes, spoons, numerous small plastic baggies, and two baggies of methamphetamine.
>
> The baggies with methamphetamine were found in a false bottom of a cigarette box in which cigarettes had been glued to the top.

---

[1]  Notice of Lodging Documents on April 28, 2010 (Doc. No. 13), Resp't's Lod. Doc. 4 (hereinafter Opinion).

[2]  The court also imposed two concurrent three-year prison terms for probation violations in two unrelated cases.

On the outside of the two baggies was written the word "ball" in black pen.  They contained respectively 3.72 grams and 2.97 grams of methamphetamine.  The pipes were like those used for smoking methamphetamine, and the spoons, scales, and pipes contained methamphetamine residue.  Sergeant Zwolinski also found a bottle of prenatal dietary supplement, which defendant claimed was vitamin B-12, which he used when "jones'ing."  Appellant had $286 in cash: twelve $20 bills, three $10 bills, one $5 bill, and eleven $1 dollar bills.

Defendant gave a <u>Miranda v. Arizona</u> (1966) 384 U.S. 436 [16 L .Ed.2d 694] waiver and told Sergeant Zwolinski he was not a drug dealer, but he admitted selling methamphetamine from time to time.  He injected methamphetamine, which he last used two days ago.  Defendant used about a gram each time, three to four times a week, and denied knowledge of the methamphetamine in his car.

Over defendant's objection, Detective Reali testified as an expert regarding possession of methamphetamine for sale.  He testified that .1 grams of methamphetamine was a useable dose, but most consumers will need a greater dose.  A typical user will carry one to two grams on their person, and someone with sufficient tolerance could use one-and-a-half to two grams.  The detective admitted some addicts may use scales to avoid accidental overdose.  While the 1.62 grams found on defendant in his residence was consistent with personal use and not a large amount of methamphetamine, the pay/owe sheets demonstrated possession for the purpose of sale.  Based on a hypothetical regarding the drugs found in the November 12 stop, Deputy Reali concluded that they were also used for sale.

Defendant, testifying, said he had been using drugs for the last 31 years, since he was 14.  At the time of his arrest he was using two to four grams of methamphetamine a day, if he could afford it.  He was relatively clean on March 1, 2006, so a half a gram would have lasted him the day.

Defendant said the pay/owe sheets were a shopping list and list of people to whom he owed money, both unrelated to methamphetamine.  He intended to use rather than sell the methamphetamine found in both searches.  Defendant also denied making any of the statements to Sergeant Zwolinski.

Defendant was charged with possession of methamphetamine for sale (Health & Saf.Code, § 11378) in counts 1 and 2 along with transportation of methamphetamine in count 3, and possession of drug paraphernalia in count 4.  The jury convicted defendant on counts 3 and 4, acquitted him of counts 1 and 2, but convicted him in counts 1 and 2 of the lesser included offenses of possession of methamphetamine.

At sentencing, the court determined that in order to be eligible for Proposition 36 probation defendant had the burden of proving by a preponderance of the evidence his possession and transportation offenses were for personal use and not for sale. Defendant objected to placing the burden of proof on him, and requested Proposition 36 probation on the basis of the jury's acquittal on the possession for sale charges. The court disagreed, finding defendant did not possess the methamphetamine for personal use, and was therefore ineligible for Proposition 36 probation.

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. <u>See</u> <u>Wilson v. Corcoran</u>, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. <u>Stanley v. Cullen</u>, 633 F.3d 852, 859 (9th Cir. 2011) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is

1  clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at

2  859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010).

3         A state court decision is "contrary to" clearly established federal law if it applies a

4  rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

5  Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640

6  (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

7  grant the writ if the state court identifies the correct governing legal principle from the Supreme

8  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3]

9  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360

10 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

11 simply because that court concludes in its independent judgment that the relevant state-court

12 decision applied clearly established federal law erroneously or incorrectly.  Rather, that

13 application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v.

14 Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

15 habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

16 the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

17 precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

18 the state court's decision." Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

19 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

20 obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

21 ruling on the claim being presented in federal court was so lacking in justification that there was

22 an error well understood and comprehended in existing law beyond any possibility for fairminded

23 disagreement." Harrington,131 S. Ct. at 786-87.

24

---

25    [3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
26 overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
   presented in the state court proceeding." Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011)
   (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1        If the state court's decision does not meet the criteria set forth in § 2254(d), a

2   reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v.

3   Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

4   Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

5   of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

6   considering de novo the constitutional issues raised.").

7        The court looks to the last reasoned state court decision as the basis for the state

8   court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

9   2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

10  from a previous state court decision, this court may consider both decisions to ascertain the

11  reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

12  banc).  "When a federal claim has been presented to a state court and the state court has denied

13  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

14  of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at

15  784-85.  This presumption may be overcome by a showing "there is reason to think some other

16  explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker,

17  501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits but provides

18  no reasoning to support its conclusion, a federal habeas court independently reviews the record to

19  determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860;

20  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is

21  not de novo review of the constitutional issue, but rather, the only method by which we can

22  determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at

23  853.  Where no reasoned decision is available, the habeas petitioner still has the burden of

24  "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct.

25  at 784.

26  /////

6

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II.  Petitioner's Claims

A.  Whether Petitioner's Sentence Violates his Rights to Due Process and a Jury Trial

In petitioner's first ground for relief, he claims that the trial judge violated his rights to due process and to a jury trial when he sentenced petitioner to prison time instead of releasing him on probation pursuant to California Proposition 36.  (Pet. at 35.)[4]  Petitioner argues that his sentence "exceeded the statutory maximum . . . which was out patient treatment pursuant to Proposition 36 and not prison."  (Id.)  As explained by the California Court of Appeal, in declining to sentence petitioner to an outpatient treatment program pursuant to Proposition 36, the trial judge found that petitioner possessed the methamphetamine for sale rather than personal use even though the jury had acquitted him of possession of methamphetamine for sale.  (Opinion at 5, 10.)  Petitioner claims this finding by the trial judge violated his rights to due process and to a jury trial, as set forth in Cunningham v. California, 549 U.S. 270 (2007).  Petitioner explains, "[t]he verdict established outpatient treatment as the maximum sentence allowed based on facts found true by the jury, such that petitioner's prison sentence relying on facts rejected by the jury violated his federal right to due process and jury trial."  (Id.)

Petitioner also argues that the state appellate court's decision rejecting his sentencing claims is contrary to the rule of law established in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004), and that the state courts' reliance on state law permitting a trial court to use acquitted upon conduct to impose a sentence above the

_____

[4]  Page number citations such as these are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

7

statutory maximum is contrary to the holdings in <u>Apprendi</u>, <u>Blakely</u>, and <u>Cunningham</u>.  (<u>Id.</u> at 35-37.)  Petitioner claims that the state court's finding that the provisions of Proposition 36 do not constitute his statutory maximum sentence is contrary to "clearly established federal law holding that a statutory maximum is defined by facts admitted by a defendant or found true by a jury."  (<u>Id.</u> at 37-38.)  Petitioner argues, "the statutory maximum was Proposition 36, because under California law, if a person is eligible for outpatient therapy, as petitioner was once he was found not guilty of possession for sale, incarceration is not a possible option, the trial court was mandated to sentence him to participation in Proposition 36 outpatient therapy as petitioner requested."  (<u>Id.</u> at 37.)  Petitioner summarizes his first ground for relief as follows: "Once the jury's verdict rejected petitioner's charge for possession for sale, there were no barriers to petitioner's statutory eligibility, and the trial court's failure to sentence him to outpatient therapy exceeded the statutory maximum for his sentence as defined by federal law, and violated his right to due process and jury trial under the Fifth and Sixth Amendments to the United States Constitution."  (<u>Id.</u> at 38.)

In his second ground for relief, petitioner claims that "the trial court's use of acquitted conduct in sentencing petitioner beyond the statutory maximum violated his Fifth Amendment Rights to Due Process and Sixth Amendment right to jury trial."  (<u>Id.</u>)  Again, petitioner argues that the sentencing judge was not entitled to make his own finding, contrary to the jury verdict, that petitioner possessed the methamphetamine for sale, and then use that finding to sentence him to prison.  (<u>Id.</u> at 38-39.)  Petitioner cites the decisions in <u>Cunningham</u> and <u>United States v. Brady</u>, 928 F.2d 844, 851-52 (9th Cir. 1991) <u>abrogated on other grounds</u> by <u>Nichols v. United States</u>, 511 U.S. 738 (1994) in support of his second ground for relief.

1. <u>State Court Decision</u>

The California Court of Appeal rejected petitioner's due process and Sixth Amendment claims, reasoning as follows:

/////

8

Proposition 36, the Substance Abuse and Crime Prevention Act of 2000, added section 1210.1 to the Penal Code, which requires the trial court to grant probation with a drug treatment condition to anyone convicted of a "nonviolent drug possession offense" unless disqualified by the provisions of section 1210.1, subdivision (b). (§ 1210.1, subd. (a).)  Section 1210, subdivision (a), defines a "nonviolent drug possession offense" as "the unlawful personal use, possession for personal use, or transportation for personal use of any controlled substance identified in Section 11054, 11055, 11056, 11057 or 11058 of the Health and Safety Code, or the offense of being under the influence of a controlled substance in violation of Section 11550 of the Health and Safety Code."

Here, defendant was not disqualified from Proposition 36 probation by any of the provisions of section 1210.1, subdivision (b).  Instead, the trial court found him ineligible because it found defendant's possession and transportation of methamphetamine was not for personal use.

Defendant contends his acquittal on charges of possession of methamphetamine for sale with respect to both incidents precluded the court from finding he was ineligible for Proposition 36 probation because he possessed and transported the drugs for sale rather than personal use. Specifically, he argues the court's use of acquitted conduct to deny Proposition 36 probation violated due process generally and the due process and jury trial rights applied to California sentencing law in <u>Cunningham</u>, and the court also violated due process by placing on him the burden of proving his

possession and transportation offenses were for personal use.  We disagree.

**A.**

In <u>People v. Takencareof</u> (1981) 119 Cal. App.3d 492, the defendant was charged with burglary and arson.  (<u>Id.</u> at p. 495.) The defendant pled guilty to burglary and the jury acquitted him of the arson count.  (<u>Ibid.</u>)  During sentencing, the trial court referred to the great harm caused by the arson and denied the defendant probation.  (<u>Id.</u> at p. 497.)  The appellate court remanded for resentencing, finding the trial court erred in considering the damage caused by the arson, because defendant had been acquitted of that charge.  (<u>Id.</u> at p. 498.)

Defendant argues that the rule of <u>Takencareof</u> precluded the trial court from using acquitted conduct to deny Proposition 36 probation, as this action increased his punishment through the use of acquitted conduct.  Subsequent to defendant's opening brief, the California Supreme Court overruled <u>Takencareof</u>.  (<u>People v. Towne</u> (2008) 44 Cal.4th 63 (<u>Towne</u>).)  Addressing whether a court could use facts implicitly found not true by the jury in its

9

decision to impose an upper term (id. at p. 83), the Supreme Court concluded neither due process, double jeopardy, nor the right to jury trial justified the rule of Takencareof, and accordingly overruled that decision.  (Id. at pp. 85-86.)

Under Towne, acquitted conduct can be considered in sentencing without violating due process. We find the Supreme Court's decision precludes us from following Takencareof and accordingly reject defendant's claim.

**B.**

Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435] held that other than the fact of a prior conviction, any fact increasing the penalty for a crime beyond the statutory maximum must be tried to a jury and proven beyond a reasonable doubt.  (Id. at p. 490 [147 L.Ed.2d at p. 455].) "[T]he 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. [Citation.]"  (Blakely v. Washington (2004) 542 U.S. 296, 303 [159 L.Ed.2d 403, 413], italics omitted.) In Cunningham, the United States Supreme Court held that by "assign[ing] to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated 'upper term' sentence", California's determinate sentencing law "violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments."  (Cunningham, supra, 549 U.S. at p. ---- [166 L.Ed.2d at p. 864].)

Defendant contends the "statutory maximum" supported by the verdicts was that he transported methamphetamine for personal use, and therefore was eligible for Proposition 36 probation.  He argues the court's finding to the contrary violated Cunningham and Apprendi.

The leading California Supreme Court case holds Proposition 36 effects a sentence reduction rather than the statutory maximum for the offense.  "[N]othing in section 1210.1 [Proposition 36] could have created an enhancement to petitioner's sentence since, when it applies, section 1210.1 reduces the potential punishment."  (In re Varnell (2003) 30 Cal.4th 1132, 1142 (Varnell).)  "[I]n enacting Proposition 36, the electorate understood incarceration to be the preexisting standard penalty; it intended probation and treatment to reduce the penalty that would otherwise apply."  (People v. Dove (2004) 124 Cal. App.4th 1, 11 (Dove)].)

Courts applying Proposition 36 have concluded, "neither Apprendi nor Blakely prohibited the trial court from deciding, based on the preponderance of the evidence, whether defendant's possession or transportation was for personal use for purposes of Proposition 36."  (Dove, supra, 124 Cal. App.4th at p. 11; see also People v.

10

Barasa (2002) 103 Cal. App.4th 287, 294 (Barasa) [Apprendi does not apply because Proposition 36 "effects a sentence reduction, rather than an increase in the 'prescribed statutory maximum' sentence"]; People v. Glasper (2003) 113 Cal. App.4th 1104, 1115 [following Barasa].)

Defendant argues these cases are distinguished as they were decided before Cunningham. He claims Cunningham "reaffirmed that a statutory maximum is determined by a jury's verdict and not a number, such as [an] upper term." This misconstrues Cunningham, a decision not relevant to the issue before us.

Cunningham did not address the sentence reduction scheme of Proposition 36 or otherwise support defendant's argument that Proposition 36 probation is the statutory maximum sentence. Indeed, Cunningham specifically identified "the middle term specified in California's statutes, . . . as the relevant statutory maximum." (Cunningham, supra, 549 U.S. at p. ---- [166 L.Ed.2d at p. 876].)

Probation is a matter of clemency, not of right. (People v. Superior Court ( Du ) (1992) 5 Cal. App.4th 822, 831.) In Varnell, our Supreme Court found this general principle equally applicable to Proposition 36 probation, and concluded it was a sentence reduction rather than establishing a new statutory maximum for the relevant offense. (Varnell, supra, 30 Cal.4th at p. 1142.) Nothing in Cunningham diminishes the authority of that holding. We are bound to follow Varnell, and like the courts in Dove, Barasa, and Glaser, conclude the rule of Apprendi does not apply to the court's decision as to whether defendant is eligible for Proposition 36 probation.[5] The court's finding that defendant possessed and transported drugs for sale rather than personal use, in spite of the jury's verdict to the contrary did not implicate the rights to jury trial and due process set forth in Apprendi, Blakely, and Cunningham.

**C.**

Barasa, supra, held the defendant has the burden of proving by a preponderance of the evidence that his drug offenses were for personal use and therefore eligible for sentence reduction under Proposition 36. (Barasa, supra, 103 Cal. App.4th at p. 296; see also Dove, supra, 124 Cal. App.4th at p. 10 [applying Barasa] .) The trial court applied the same standard in finding defendant's

---

[5]  Nor, as defendant contends, does the fact that Barasa involved guilty pleas rather than an acquittal (see Barasa, supra, 103 Cal. App.4th at p. 290) change our analysis.  Barasa's holding is based on the premise that Proposition 36 reduces punishment rather than establishing a new maximum sentence. (Id. at pp. 294-295.)  Whether the case involves a guilty plea or an acquittal and conviction on a lesser offense is irrelevant to the Apprendi analysis.

drugs were not for personal use, and defendant argues this violates due process.

Evidence Code section 500 provides: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."  Citing this provision, the court in Barasa determined the defendant, as the party seeking relief under Proposition 36, had the burden of proving by a preponderance of the evidence the drugs he transported were for personal use.  (Barasa, supra, 103 Cal. App.4th at p. 296.)

We agree with the reasoning of the Court of Appeal in Barasa.  As already discussed, the California Supreme Court held in Varnell that Proposition 36 operates as a sentence reduction.  (Varnell, supra, 30 Cal.4th at p. 1142.)  The defendant is therefore the party seeking relief under this provision, and, under Evidence Code section 500, the party upon whom the burden of proof should be placed.  As there is no justification for placing a higher burden, this burden should be carried by a preponderance of the evidence.

This is consistent with our decision in People v. Atwood (2003) 110 Cal. App.4th 805, where we held the People had the burden to prove the purpose of a missed probation interview when seeking to terminate Proposition 36 probation and send the defendant to prison.  (Id. at pp. 811-813.)  "The burdens of producing evidence and of persuasion flow from a party's status as a claimant seeking relief.  In Barasa, the defendant was the claimant.  Here, the People, not defendant, are the claimant.  Because they are both claimants, both the defendant in Barasa and the People in this case are properly assigned the burdens of producing evidence and of persuasion."  (Id. at p. 812.)  It is entirely consistent with due process to place the burden of proof on defendant as the party seeking relief under Proposition 36.

(Opinion at 5-11.)

## 2. Applicable Federal Standards

Federal collateral review of a state criminal conviction is limited to determining whether petitioner's federal constitutional or other federal rights have been violated and does not extend to review a state's application of its own laws.  Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990); Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (recognizing that the decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus).  Federal courts must defer to

12

1    the state courts' interpretation of state sentencing laws.  <u>Estelle</u>, 502 U.S. at 67-68; <u>Bueno v.</u>

2    <u>Hallahan</u>, 988 F.2d 86, 88 (9th Cir. 1993).  Absent a showing of fundamental unfairness, a state

3    court's application or misapplication of its own sentencing laws does not generally justify federal

4    habeas relief.  <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994).  "So long as the type of

5    punishment is not based upon any proscribed federal grounds such as being cruel and unusual,

6    racially or ethnically motivated, or enhanced by indigency, the penalties for violations of state

7    statutes are matters of state concern."  <u>See</u> <u>Makal v. Arizona</u>, 544 F.2d 1030, 1035 (9th Cir.

8    1976).

9           A criminal defendant is entitled to a trial by jury and to have every element

10   necessary to sustain his conviction proven by the state beyond a reasonable doubt.  U. S. Const.

11   amends. V, VI, XIV.  In <u>Apprendi</u>, the United States Supreme Court held that the Due Process

12   Clause of the Fourteenth Amendment requires any fact other than a prior conviction that

13   "increases the penalty for a crime beyond the prescribed statutory maximum" to be "submitted to

14   a jury and proved beyond a reasonable doubt."  530 U.S. at 490.  In <u>Blakely</u>, the United States

15   Supreme Court decided that a defendant in a criminal case is entitled to have a jury determine

16   beyond a reasonable doubt any fact that increases the statutory maximum sentence, unless the

17   fact was admitted by the defendant or was based on a prior conviction.  542 U.S. at 303-04.  The

18   Supreme Court also clarified the definition of "statutory maximum" for purposes of this

19   constitutional rule by stating:  "the relevant 'statutory maximum' is not the maximum sentence a

20   judge may impose after finding additional facts, but the maximum he may impose *without* any

21   additional facts."  <u>Id</u>. at 2537.  In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the United States

22   Supreme Court applied <u>Blakely</u> to the Federal Sentencing Guidelines.  The court again clarified

23   that "'the statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may

24   impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

25   <u>Id</u>. at 232.  Citing the decisions in <u>Apprendi</u> and <u>Blakely</u>, the Supreme Court in <u>Cunningham</u> held

26   that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the

extent it permits a trial court to impose an upper term based on facts found by the court rather than by a jury. 549 U.S. at 288-89. The court determined that "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." Id. at 288. The Ninth Circuit has subsequently held that Cunningham may be applied retroactively on collateral review. Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).

       3. Analysis

       The determination of the California Court of Appeal that California's Proposition 36 is a sentence "reduction" rather than the statutory maximum for the relevant offense is binding on this court. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Therefore, petitioner's prison sentence did not exceed the statutory maximum for his crimes and is not prohibited by the rule of law established in Apprendi, Cunningham, or Blakely. Therefore, the state appellate court's decision rejecting petitioner's claims was not contrary to or an unreasonable application of federal law and may not be set aside. See Lockyer, 538 U.S. at 75; Williams, 529 U.S. at 413.

      Courts considering claims similar to those petitioner raises here have reached this same conclusion. In this regard, subsequent to the Booker decision the Ninth Circuit has held that a sentencing court does not violate the Sixth Amendment right to jury trial by considering conduct that a defendant was acquitted upon in sentencing so long as the sentence imposed does not exceed the statutory maximum sentence on the counts of conviction. United States v. Mercado, 474 F.3d 654 (9th Cir. 2007). The court in Mercado noted that "every other Court of Appeals to consider the issue has agreed with the proposition that the use of acquitted conduct at sentencing does not violate the Constitution," and held that "Booker has not abrogated the previously prevailing constitutional jurisprudence that allowed sentencing courts to consider conduct underlying acquitted criminal charges." Id. at 657, 658. See also United States v. Valentine, No. 07-10017, 2009 WL 424544, at *1 (9th Cir. Feb. 20, 2009) ("A sentencing judge

14

1  may rely upon uncharged or even acquitted conduct in making a guidelines calculation.");

2  United States v. Chong, No. 06-10100, 2007 WL 1991064, at *1 (9th Cir. July 6, 2007)

3  (concluding that a trial court's consideration of conduct underlying an acquitted charge in

4  imposing sentence did not violate the defendant's right to due process).[6]

5  In federal court, a trial judge is entitled to find by a preponderance of the evidence

6  all facts relevant to the determination of a sentence below the statutory maximum.  United States

7  v. Treadwell, 593 F.3d 990, 1017-18 (9th Cir.), cert. denied, ___ U.S. ___, 131 S. Ct. 488 (2010).

8  See also Winn v. Cate, No. 2:08-cv-01895-JWS, 2010 WL 1558956, *6 (E.D. Cal. April 19,

9  2010) (rejecting claim similar to that raised in the instant petition).

10  In light of this authority, petitioner is not entitled to federal habeas relief with

11  respect to his due process and Sixth Amendment challenges to his state court imposed sentence.

12  B.  Whether Petitioner's Sentence Violates the Double Jeopardy Clause

13  In his third ground for relief, petitioner argues that the state trial court violated the

14  Double Jeopardy Clause when it relied upon acquitted conduct to decline the imposition of a

15  sentence under California's Proposition 36.  (Pet. at 40.)  This claim is foreclosed by the United

16  States Supreme Court's holding that the Double Jeopardy Clause "does not prevent the

17  sentencing court from considering conduct underlying [an] acquitted charge, so long as that

18  conduct has been proved by a preponderance of the evidence."  United States v. Watts, 519 U.S.

19  148, 147 (1997).

20  The California Court of Appeal rejected petitioner's Double Jeopardy claim based

21  upon reasoning similar to that employed by the Supreme Court in Watts, stating as follows:

22          Defendant claims use of the acquitted conduct to render him
        ineligible for Proposition 36 treatment violates the state and federal
23          prohibitions against double jeopardy.  We disagree.

24  /////

25

26  _____

   [6]  Citation of these unpublished dispositions by the Ninth Circuit Court of Appeals is
appropriate pursuant to Fed. R. App. P. 32.1 and U.S. Ct. of App. 9th Cir. Rule 36-3(b).

> As we have already discussed, the California Supreme Court held the use of a fact implicitly rejected by the verdict in sentencing does not violate double jeopardy.  (Towne, supra, 44 Cal.4th at p. 85.)  The United States Supreme Court has come to the same conclusion.  (United States v. Watts (1997) 519 U.S. 148, 157 [136 L.Ed.2d 554, 565].)
>
> Although these cases are mentioned elsewhere in his brief, defendant's double jeopardy argument does not discuss them, let alone provide us with a reason to disregard the rulings of either Supreme Court.

(Opinion at 11-12.)  The state appellate court's decision in this regard was not contrary to or an unreasonable application of the legal principles announced by the Supreme Court in Watts. Accordingly, petitioner is not entitled to federal habeas relief on his Double Jeopardy claim.

C.  Insufficient Evidence

Petitioner next challenges the sufficiency of the evidence to support the trial judge's finding, for the limited purpose of determining his sentence, that petitioner possessed the methamphetamine in question for sale and not for personal use.  (Pet. at 11, 41-42.)  Petitioner argues the evidence was insufficient because the jury acquitted him of the charge of possession of methamphetamine for sale.  (Id. at 41.)  He also complains that the trial judge relied on the opinion of Detective Reali that petitioner possessed the methamphetamine for sale, even though the detective "had never qualified as an expert before at trial, did not know how methamphetamine tolerance operates in the body, did not know petitioner's drug history, and did not know what a usable quantity would be for someone with an extensive drug use history."  (Id. at 42.)  Petitioner further argues that his own trial testimony established that he possessed the methamphetamine for personal use only.  (Id.)

1.  State Court Decision

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant also claims the ruling that the methamphetamine was not for personal use was an abuse of discretion because it was not supported by substantial evidence and was based on improper expert testimony.  We reject the contentions.

/////

16

**A.**

We will uphold the trial court's finding that the defendant's drugs were not possessed or transported for personal use if it is supported by substantial evidence.  (See, Dove, supra, 124 Cal. App.4th at p. 10.)  Defendant's possession of pay/owe sheets, a cutting agent for methamphetamine, large sums of cash, several scales, and his admission to an officer that he sold small quantities of methamphetamine all support the conclusion that the methamphetamine in his possession in both incidents was not for personal use.  Although defendant also possessed paraphernalia for using the drug, the expert testified that some drug dealers also use their own product.  Taken together, this is substantial evidence supporting the court's findings.

**B.**

Defendant contends Deputy Reali was unqualified to testify as an expert on possession of methamphetamine for sale.  We disagree.  "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates."  (Evid. Code, § 720, subd. (a).)  An expert is qualified if he has sufficient skill or experience in the field so that his testimony would be likely to assist the jury in the search for the truth.  (Mann v. Cracchiolo (1985) 38 Cal.3d 18, 38.)  The trial court's determination whether a witness qualifies as an expert is subject to review for abuse of discretion.  (People v. Catlin (2001) 26 Cal.4th 81, 131.)

Detective Reali testified as an expert on the possession of methamphetamine for the purpose of sale.  Defendant objected, asserting Detective Reali had no expertise on the effect of a person's tolerance for methamphetamine on whether the drug was possessed for personal use.  The court overruled the objection and allowed the detective to testify as an expert on possession of methamphetamine for sale.

Detective Reali took an 80-hour narcotics course from the Department of Justice, and also studied matters related to the sale of narcotics in the 80-hour Department of Justice detective core course.  The majority of his narcotics course was on methamphetamine.  As a detective for the narcotics street team, he made arrests for people engaged in illegal drug activity, though he never made a purchase of, or participated in, a sale operation for methamphetamine.  He was not familiar with the manufacture of methamphetamine, precisely how to cut it, specifically how it affects the addictive centers of the brain, or how the body develops tolerance for the drug.  He had testified as an expert at preliminary hearings four times, though never before at trial.

/////

17

> Defendant argues Detective Reali knew no more than the average person on whether methamphetamine was possessed for sale rather than personal use and therefore was not qualified to give expert testimony. The only case cited by defendant in support of his argument, People v. Chakos (2007) 158 Cal. App.4th 357, is inapposite. In Chakos, the court held that expertise in possession of illegal drugs for sale did not qualify the witness in determining whether the marijuana was possessed illegally or for legal medicinal purposes. (Id. at pp. 365, 367-368.) Detective Reali did not testify on whether the methamphetamine was possessed legally, but whether this illegal drug was possessed for personal use or sale. His training and experience qualify him to testify on this matter and the court did not abuse its discretion in allowing his expert testimony.

(Opinion at 14-16.)

 2. Analysis

The United States Supreme Court announced the federal standard for determining the sufficiency of the evidence to support a conviction in Jackson v. Virginia, 443 U.S. 307 (1979). Under Jackson, there is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The standard announced in Jackson "operates to give 'concrete substance' to the presumption of innocence, to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding." Id. at 315 (quoting In re Winship, 397 U.S. 358, 363 (1970)). Petitioner's sufficiency of the evidence claim does not involve a challenge to his conviction. Rather, it concerns the evidence necessary to support a sentence imposed by a state court judge. Under these circumstances, it appears that petitioner's claim challenges only the state courts' interpretation of state sentencing law. As noted above, claims of state sentencing error are not

/////

/////

/////

/////

18

1  generally cognizable in federal habeas corpus proceedings.[7]  However, assuming arguendo that

2  the Jackson standard applies in assessing this federal habeas claim, petitioner is not entitled to

3  relief.

4           In determining the reasonableness of the state court decision on petitioner's

5  sufficiency of the evidence claim this court would apply Jackson in light of California law

6  regarding sufficiency of the evidence to support a reduced sentence.  See Jackson, 443 U.S. at

7  324 (federal habeas claims "must be gauged in the light of the applicable [state] law defining the

8  element").  As described by the California Court of Appeal, in California "the defendant has the

9  burden of proving by a preponderance of the evidence that his drug offenses were for personal

10  use and therefore eligible for sentence reduction under Proposition 36."  (Opinion at 10.)  The

11  trial judge in this case applied that same standard in determining that petitioner possessed the

12  methamphetamine for sale.[8]  (Id.)  Accordingly, the question before this court, under Jackson, is

13  whether any rational trier of fact could conclude that petitioner failed to prove by a

14  preponderance of the evidence that he possessed the methamphetamine for personal use.  Other

15  courts have applied a similar test in analogous circumstances.  See, e.g., Lambert v. Workman,

16  No. 00-CV-313-TCK-FHM, 2009 WL 1941971, at *9 (N.D. Okla. July 2, 2009) ("Under the

17  AEDPA, a challenge to the sufficiency of the evidence must establish that no 'rational trier of

18  fact' could have found Petitioner competent by a preponderance of the evidence"); Perez v. Cain,

19  No. 04-1905, 2008 WL 108661, at *8 (E.D. La. Jan. 8. 2008) ("Applying the Jackson standard to

20

21          [7]  In federal criminal trials, trial judges can find sentencing factors by a preponderance of
    the evidence and not fun afoul of due process and the Sixth Amendment, so long as the sentence
22  imposed is not more severe than the statutory maximum for the offense established by the jury's
    verdict, does not negate the presumption of innocence or relieve the prosecution of the burden of
23  proving guilt of the underlying crime, and does not create a separate offense calling for a separate
    penalty.  McMillan v. Pennsylvania, 477 U.S. 79, 91-93 (1986).

24          [8]  Preponderance of the evidence "simply means what it says, viz., that the evidence on
25  one side outweighs, preponderates over, is more than, the evidence on the other side, not
    necessarily in number of witnesses or quantity, but in its effect on those to whom it is addressed."
26  People v. Miller, 171 Cal. 649, 652 (1916).  See also CALJIC 2.50.2 ("'Preponderance of the
    evidence' means evidence that has more convincing force than that opposed to it.")

the insanity defense under Louisiana law, the inquiry for a reviewing court is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude beyond a reasonable doubt that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense"); Sandoval v. Director, No. 6:07cv512, 2008 WL 4365919, at *3 (E.D. Tex. Sept. 19. 2008) (decision to revoke defendant's probation supported by sufficient evidence where it did not appear that no rational trier of fact could have determined by a preponderance of the evidence that defendant had violated a term of his probation); Player v. Quarterman, No. 3:05cv2119, 2006 WL 2601678, at *3 (N.D. Tex., Sept. 11, 2006) (same).

        Here, there was sufficient evidence introduced at petitioner's trial from which the sentencing judge could have found by a preponderance of the evidence that petitioner possessed the methamphetamine for sale (or could have found that petitioner failed to sustain his burden under the same standard to establish to the contrary).  Following the verdict, the trial court heard argument from counsel on whether petitioner possessed the methamphetamine for personal use. (Reporter's Transcript on Appeal (RT) at 325-30.)  After hearing those arguments, the trial judge concluded petitioner possessed the methamphetamine for sale.  The trial judge reached his decision based on evidence introduced at trial that petitioner possessed, among other things, numerous plastic baggies, a butane torch, two plastic scales, two cell phones, 66 dosages of drugs, and $286 in cash.  (Id. at 331.)  The trial judge also noted petitioner's trial testimony that he in fact sold small amounts of the drug.  (Id. at 332.)  Finally, the trial court noted that "the officers testified that based upon all these circumstances that it was their opinion that he possessed it for purposes of sale."  (Id. at 331.)  All of this evidence fully supports the trial court's finding, based upon a preponderance of the evidence, that petitioner possessed the methamphetamine in question for sale.  This is true even though petitioner testified that he possessed the methamphetamine for personal use and that his drug habit required him to consume relatively large amounts of the drug.  The trial judge was free to disregard this

1 testimony and to rely on other evidence introduced at trial, including the testimony of Detective

2 Reali, in reaching his contrary conclusion.

3         Nor is petitioner entitled to relief on his claim that the trial judge improperly

4 relied on the testimony of Detective Reali in finding that petitioner possessed the

5 methamphetamine for sale.  This claim is essentially a challenge to the state court's interpretation

6 of state law concerning the admissibility of evidence.  A purported error in applying the

7 California Evidence Code does not support the granting of federal habeas relief.  Wilson v.

8 Corcoran, 131 S. Ct. at 16 (emphasizing that it is not the province of a federal habeas court to re-

9 examine state court determinations on state law questions); Estelle, 502 U.S. at 67-68 (same).  In

10 any event, under the circumstances of this case the trial judge's reliance on Detective Reali's

11 testimony to support his sentencing determination did not render petitioner's sentencing

12 proceedings fundamentally unfair.  Significant evidence, even apart from Detective Reali's

13 testimony, supported the trial judge's decision that petitioner possessed the methamphetamine for

14 sale.

15         For all of these reasons, petitioner is not entitled to federal habeas relief with

16 respect to his claim that the evidence was insufficient to support his prison sentence.

17       D.  Ineffective Assistance of Counsel

18         Petitioner claims that both his trial counsel and his appellate counsel rendered

19 ineffective assistance.  After setting forth the applicable legal standards, the court will evaluate

20 these claims in turn below.

21       1.  Applicable Legal Standards

22         The Sixth Amendment guarantees the effective assistance of counsel.  The United

23 States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

24 Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

25 counsel, a petitioner must first show that, considering all the circumstances, counsel's

26 performance fell below an objective standard of reasonableness.  466 U.S. at 687-88.  After a

1   petitioner identifies the acts or omissions that are alleged not to have been the result of

2   reasonable professional judgment, the court must determine whether, in light of all the

3   circumstances, the identified acts or omissions were outside the wide range of professionally

4   competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

5   petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

6   466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

7   counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

8   694.  A reasonable probability is "a probability sufficient to undermine confidence in the

9   outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

10  (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

11  deficient before examining the prejudice suffered by the defendant as a result of the alleged

12  deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

13  sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955

14  (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).  In assessing an ineffective assistance of

15  counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide

16  range of professional assistance.'"  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting

17  Strickland, 466 U.S. at 689).  There is, in addition, a strong presumption that counsel "exercised

18  acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d

19  695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

20          The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

21  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

22  However, an indigent defendant "does not have a constitutional right to compel appointed

23  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

24  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

25  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

26  ability of counsel to present the client's case in accord with counsel's professional evaluation

1  would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

2  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

3  not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

4  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

5  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

6  to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

7  context, petitioner must show that, but for appellate counsel's errors, he probably would have

8  prevailed on appeal.  Id. at 1434 n.9.

9          2. Trial Counsel

10         Petitioner argues that his trial counsel rendered ineffective assistance by failing to

11 "request a special finding from the jury that the drugs petitioner transported were for 'personal

12 use.'" (Pet. at 43.)  Petitioner reasons that if the jury had been presented with such an instruction,

13 it would have found "true" that petitioner's possession of the methamphetamine was for personal

14 use, and the trial court would then have been "obligated" to sentence petitioner to a drug

15 treatment program pursuant to Proposition 36.  (Id.)

16         The Sacramento County Superior Court rejected this claim, reasoning as follows:

17         Petitioner next claims ineffective assistance of counsel, in failing
           . . . to request special findings on sales and eligibility for
18         Proposition 36.

19         As the claim is based on the record, the claim could have been
           raised on appeal and therefore is barred under Dixon.
20
           Regardless, it is meritless in any event. . . . [T]he court denied
21         Proposition 36 probation after determining that the possession was
           not for personal use, which is an issue for the court and not the jury
22         to decide (People v. Dove (2004) 124 Cal. App.4th 1; People v.
           Glasper (2003) 113 Cal. App.4th 1104; People v. Barasa (2002)
23         103 Cal. App.4th 287), as was held on the appeal in this matter by
           the Third District.  As such, trial counsel could not have requested
24         special findings regarding personal use.  The claim, therefore, fails
           (Bower, supra).
25

26 (Id. at 110.)

                                    23

1    Petitioner argues that the Sacramento County Superior Court's decision rejecting

2 this claim is "erroneous" because the cases cited in the court's order do not necessarily preclude

3 trial counsel from requesting a finding from the jury on the issue of whether the defendant's

4 possession of drugs was for personal use.  (Id. at 44.)  Petitioner also argues that the cases cited

5 by the Superior Court in its order are "no longer controlling authority post-Cunningham, which

6 requires petitioner's statutory maximum based on the verdicts to be Proposition 36 outpatient

7 probation." (emphasis in original.)  (Id.)

8    Petitioner has failed to demonstrate prejudice with respect to this claim.  Even if

9 petitioner's trial counsel had requested and obtained a finding by the jury that petitioner

10 possessed the methamphetamine for sale, the trial judge was free to redetermine this issue for

11 purposes of sentencing under Proposition 36.  People v. Harris, 171 Cal. App.4th 1488, 1498

12 (2009) ("We recognize that the acquittal of a charge or not true finding of a sentencing allegation

13 generally does not bind the trial court from redetermining the personal use issue for Proposition

14 36 purposes based on the preponderance of the evidence standard because an acquittal or not true

15 finding merely means that the jury was not convinced beyond a reasonable doubt on such issue.")

16 There is no evidence before this court indicating that the trial judge would have sentenced

17 petitioner to probation if the jury had made a finding that petitioner possessed the

18 methamphetamine for personal use.  As described above, the judge properly relied on the

19 evidence introduced at trial to determine that petitioner possessed the methamphetamine for sale,

20 notwithstanding the jury's verdict of acquittal on that same charge.

21    The court also notes that to be "deficient," trial counsel's performance must be

22 objectively unreasonable "under prevailing professional norms" and under "all the

23 circumstances" of the particular case.  Strickland, 466 U.S. at 687-88.  A reviewing court must

24 also "evaluate the conduct from counsel's perspective at the time."  Id. at 689.  In light of the

25 Sacramento County Superior Court's ruling on this claim, based on its understanding that "trial

26 counsel could not have requested special findings regarding personal use," petitioner has failed to

24

1    establish that his trial counsel's failure to request a specific jury finding on whether he possessed

2    the methamphetamine for personal use was objectively unreasonable under prevailing

3    professional norms.

4            For all of the above-described reasons, the rejection of this ineffective assistance

5    of trial counsel claim by the state courts cannot be characterized as unreasonable and petitioner is

6    therefore not entitled to federal habeas relief.  See Premo v. Moore, ___U.S. ___, ___, 131 S. Ct.

7    733, 743-45 (2011).

8            3.  Appellate Counsel

9            In his final ground for relief, petitioner claims that his appellate counsel rendered

10   ineffective assistance by failing to raise on appeal a claim that his trial counsel was ineffective in

11   failing to request a special jury finding that petitioner possessed the methamphetamine for

12   personal use.  (Pet. at 48-49.)

13           For the reasons set forth above, this court has found petitioner's claim that his trial

14   counsel rendered ineffective assistance to lack merit.  Of course, petitioner's appellate counsel

15   had no obligation to raise meritless issues on appeal.  Strickland, 466 U.S. at 687-88.  Appellate

16   counsel's decision to raise other issues that he believed, in his professional judgment, had more

17   merit than the ineffective assistance of trial counsel claim suggested by petitioner was clearly

18   "within the range of competence demanded of attorneys in criminal cases."  McMann v.

19   Richardson, 397 U.S. 759, 771 (1970).  Accordingly, the rejection of petitioner's ineffective

20   assistance of appellate counsel claim by the state courts also cannot be characterized as

21   unreasonable and petitioner is therefore not entitled to federal habeas relief with respect to this

22   claim.

23           4.  Evidentiary Hearing

24           Petitioner requests an evidentiary hearing on his claims of ineffective assistance of

25   trial and appellate counsel.

26   /////

Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is only appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> > (A) the claim relies on-
> >
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted). Moreover, the Supreme Court has recently held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits" and "that evidence introduced in federal court has no bearing on" such review. Cullen v. Pinholster, 563 U.S. ___, ___, 131 S. Ct. 1388, 1398, 1400 (2011).

1    In any event, the court concludes that no additional factual supplementation is

2  necessary in this case and that an evidentiary hearing is not appropriate with respect to the

3  petitioner's ineffective assistance of counsel claims.  The facts alleged in support of these claims,

4  even if established at a hearing, would not entitle petitioner to federal habeas relief.  Therefore,

5  petitioner's request for an evidentiary hearing should be denied.

6                                CONCLUSION

7    For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

8  application for a writ of habeas corpus be denied.

9    These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

11  one days after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14  shall be served and filed within fourteen days after service of the objections.  Failure to file

15  objections within the specified time may waive the right to appeal the District Court's order.

16  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

17  1991).  In his objections petitioner may address whether a certificate of appealability should issue

18  in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules

19  Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

20  when it enters a final order adverse to the applicant).

21  DATED: May 31, 2011.

22

23

                                        DALE A. DROZD
24                                      UNITED STATES MAGISTRATE JUDGE

25  DAD:8
    johnson237.hc
26